**Brian L. PENLEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 29A02–9909–CR–654.**

Court of Appeals of Indiana.

Aug. 30, 2000.

Bruce A. Kotzan, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Kristin T. Givens, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Brian Penley appeals his conviction after a jury trial of pointing a firearm, a Class A misdemeanor.[1] He raises four issues on appeal, which we consolidate and restate as whether the State improperly withheld exculpatory evidence.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On July 27, 1997, Penley and Paul Zeman were involved in an incident in a grocery store parking lot near Westfield. Penley was dropping off his son in front of the store and Penley's vehicle was blocking traffic. Zeman was attempting to pass the Penley vehicle when he heard a loud noise and thought the Penley vehicle had struck his vehicle. Zeman got out of his vehicle and approached the Penley vehicle. He testified Penley pointed a gun at him.

Zeman told his family to call the police, and a Westfield police officer reported to the scene. The officer interviewed Zeman

---

1.  Ind.Code § 35–47–4–3.

and two witnesses, including Dovie Madsen. In her probable cause affidavit, the officer stated that "two (2) independent witnesses, who were interviewed at the scene" verified Zeman's version of the incident.[2] (R. at 23.) The officer did not indicate in the probable cause affidavit the name of either witness. The officer later interviewed the Penleys at their residence. She made a written report of her investigation but did not bring it to the trial.

In the State's pretrial discovery response, it indicated that it had provided Penley with the probable cause affidavit and further indicated there were no items not provided to Penley "which may be relevant to issues at trial." (R. at 34–35.) Prior to trial, Penley sought and was granted a motion in limine to prevent the State from mentioning that two independent witnesses could confirm Zeman's version of the incident. On the morning of the trial, the State told Penley's counsel and the trial judge that "the names of those witnesses are Dove Matson, Dove, D-o-v-e, M-a-t-s-o-n. And Cynthia Henley, H-e-n-l-e-y." (R. at 304.) Neither witness was called to testify.

After the trial, Penley learned for the first time Madsen's correct name. Madsen provided Penley with an affidavit indicating she had observed the confrontation between Penley and Zeman; she was within ten feet of the Penley vehicle and did not see a weapon; and she had given her name to a female member of the Westfield Police Department. Penley filed a Motion to Correct Error, which the trial court denied.

## DISCUSSION AND DECISION

When reviewing a claim of prosecutorial misconduct, we consider first whether the prosecutor committed misconduct and second whether the misconduct placed the defendant in a position of grave peril. *Malone v. State*, 700 N.E.2d 780, 783 (Ind.1998). The gravity of the peril is determined by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of the impropriety of the misconduct. *Id.*

The State's representation that there were two unnamed eyewitnesses who supported Zeman's version of the incident and its failure to provide the defense with Madsen's correct name prior to trial were misconduct. We note initially that a prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, and thus is charged with knowledge of potentially exculpatory evidence of which the police are aware.[3] *Turner v. State*, 684 N.E.2d 564, 568 (Ind.Ct.App.1997). The State is thus charged with knowledge of the information Madsen provided to the investigating police officer who interviewed her at the scene, despite its assertion subsequent to the trial that "the State never had any information from Ms. Madsen." (R. at 190.)

To support a claim of prosecutorial misconduct, the withheld evidence must be

2. The State asserted in its response to Penley's Motion to Correct Error that it "never had any information from Ms. Madsen." (R. at 190.)

3. The State asserts "[t]he prosecutor was only obligated to disclose Madsen's name and expected testimony if he knew that her statements would be helpful to Defendant," (Br. of Appellee at 5), and cites for this proposition *Lock v. State*, 567 N.E.2d 1155 (Ind.1991). The State does not favor us with a pinpoint citation indicating where in the *Lock* decision this statement may be found, and our independent review of *Lock* reveals no such statement. The State then asserts "[t]he record shows that the prosecutor knew only that Madsen's statements to police verified the victim's version of the offense (R. 128)." (Br. of Appellee at 5.) The page of the record to which the State refers us does not support this statement. That page of the record, a transcript of a narrative by the investigating officer, makes only one reference to the witnesses: "There were also two (2) independent witnesses, Dove Matson and Cynthia Henley. (Statements attached)." There is no indication on that page of the record that either or both of the witnesses "verified the victim's version of the offense" and there are no "statements attached."

"material" to the defense. *Harrison v. State,* 707 N.E.2d 767, 789 (Ind.1999), *cert. denied,* — U.S. —, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). The defendant must show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Id.* The evidence withheld in *Harrison* supported, "[a]t most ... a talking point to attack the motives of one witness," so the State's failure to identify and disclose it was not error. *Id.* Similarly, in *Malone* the State apparently misrepresented that one of its witnesses was temporarily unavailable, causing the court to permit a recess. Our supreme court determined the misconduct, if any, had no persuasive effect on the jury because that witness's testimony was subsequently excluded.

In the case before us, by contrast, the unavailability of the evidence at trial does "undermine confidence in the verdict." A prosecutor has a duty to volunteer material evidence to the defense in order that "justice shall be done," *Denman v. State,* 432 N.E.2d 426, 430 (Ind.Ct.App. 1982), quoting *United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and evidence is "material" if it creates a reasonable doubt that did not otherwise exist. *Id.* at 431. The only eyewitness evidence offered at trial was in the form of testimony or deposition evidence from the victim, the defendant, the victim's son and the defendant's wife. No physical evidence was offered. As such, the jury's verdict was premised solely on witness credibility; the testimony of an independent eyewitness who did not see a gun could have created a reasonable doubt that did not otherwise exist. The State's withholding of that evidence does undermine confidence in this verdict.

The trial court's judgment is reversed.

BAILEY, J., and BROOK, J., concur.